Opinion by
Mr. Justice Hall.
The parties appear here in reverse order to their appearance in the trial court. We refer to them as they there appeared.
Plaintiff commenced this suit in the County Court of Mesa County. He sought to recover $1252.29 and interest thereon, alleged to be owing to him by defendant as wages due.
The defendant filed his answer in which he denied the allegations of plaintiff’s complaint. He also interposed his counterclaim seeking judgment in the amount of $6000.00 against the plaintiff because of his alleged intentional and malicious interference with defendant’s business in inducing a number of the clients of Miller & McCollom to have their accounting work performed by plaintiff as a self-employed accountant rather than as an employe of Miller & McCollom.
Plaintiff filed his “Reply to Counterclaim,” denying the allegations thereof.
The parties agreed to try the matter to the court. Immediately preceding the taking of testimony, the parties stipulated that if the court found any amount to be due plaintiff from defendant for wages earned, plaintiff should have judgment for $1300.00, and that on *248 entry of such judgment plaintiff have no further interest in accounts receivable due defendant on account of work performed by plaintiff.
The court heard the testimony, briefs were filed by the parties, and the court made findings and entered judgment in favor of plaintiff for $1300.00 and dismissed defendant’s counterclaim.
Defendant is here by writ of error seeking reversal.
The evidence is not in dispute.
In 1955 plaintiff commenced working for defendant at Grand Junction, Colorado, in his accounting practice. On January 2, 1958, the parties reduced the contract of employment to writing. Pertinent provisions provided that plaintiff receive as compensation for his services 50% of collections allocated to plaintiff up to $12,000.00 annually, and 60% on the excess of $12,000.00; that plaintiff should not, for a period of one year after termination of his employment, do any business normally serviced by defendant’s firm.
The parties proceeded in conformity with this written contract until September 1, 1959, at which time defendant sold to Miller & McCollom his accounting practice, including furniture, fixtures, business location, records, good will, etc. He did not sell accounts receivable. For this business he was paid $10,000.00 and, as further consideration, an agreement from Miller & Mc-Collom that they would pay to him:
“Fifteen percent (15%) of all gross moneys received for services performed, exclusive of expenses reimbursable by client, from September 1, 1959, to September 1, 1964, from those parties who are clients of the seller [defendant] as of September 1, 1959.”
On completion of this sale plaintiff and most, if not all, of defendant’s employes accepted employment by Miller & McCollom. In their new employment they received fixed salaries and there was no division of fees for work performed. Their employment was by verbal *249 agreement and there were no limitations as to what plaintiff could do in the event of termination of his employment. Neither party was bound for any fixed period of time.
Plaintiff and Miller & McCollom operated under this employment agreement from September 1, 1959, until December 5, 1960, when plaintiff terminated his employment with Miller & McCollom, for the reason that he was not being paid regularly.
On December 6, 1960, plaintiff opened his own accounting office in Grand Junction, engaging in the same business as Miller & McCollom. Many of the clients that plaintiff had serviced during his employment by defendant, and had continued to service during his employment with Miller & McCollom, followed him to his new location, thus adversely affecting the business of Miller & McCollom, and as an incident thereof lessening the amount that defendant was receiving from Miller & McCollom on the provision calling for 15% of amounts received by them from former clients of defendant.
We have searched the record before us with great care, read the defendant’s forty-one page brief, and find nothing that even tends to show that the judgment of the trial court is in error.
The record is replete with admissions by the defendant that he had made collections after September 1, 1959, for work done by plaintiff prior to that date, and that he had not paid plaintiff his 50% or 60%; that he wanted to pay him and did make payments as he could, but lack of funds prevented him from making payment in full.
This testimony of the defendant, coupled with the parties’ stipulation that if anything was found due to plaintiff that in such event judgment should be entered for $1300.00 by the trial judge, left only one course of procedure open for the trial judge, and that was, to do exactly that which he did do, enter judgment in the *250 amount of $1300.00 in favor of plaintiff and against the defendant.
Defendant’s counterclaim is equally devoid of merit. Defendant sold his business, he ceased to be an employer, and his duties to the plaintiff terminated with the exception of his duty to account to plaintiff for his percentage of collections made for work performed prior to the time the business was sold to Miller & McCollom.
Plaintiff’s remaining obligation to defendant, if any, was to refrain for a period of one year from September 1, 1959, from competing with the defendant. For more than fifteen months after defendant sold his business to Miller & McCollom, plaintiff worked for Miller & Mc-Collom under the direct supervision of defendant, who was the manager of the Grand Junction office of Miller & McCollom. Certainly defendant, who was out of business and was himself an employe of the same firm as plaintiff, cannot now complain of things that plaintiff did under his direct supervision.
At the end of one year after plaintiff’s employment with defendant was terminated, he was free to open his own office. His noncompetitive agreement with defendant had by its terms expired.
Counsel points out that plaintiff was under contractual prohibitions to defendant. Overlooked entirely is the undisputed fact that such prohibitions had expired on September 1, 1960, if not before. There is not one word of testimony in the record before us indicating that plaintiff did not strictly comply with the prohibitions until December 5, 1960, more than three months after they were terminated.
Counsel urges that this court has analyzed covenants not to compete and has concluded that such are in the public interest and enforceable. Numerous decisions of this court are cited. We are referred to no decision holding that such covenants will be enforced for a period of time in excess of that agreed upon by the *251 parties. Nothing presented herein comes near to prompting us to make any such pronouncement now.
The judgment is affirmed.
Mr. Chief Justice Day and Mr. Justice Sutton concur.